## S02A1077. TRIGGER v. THE STATE.
(570 SE2d 323)

SEARS, Presiding Justice.

The appellant, Tony Trigger, appeals from his convictions for felony murder and the possession of a firearm by a convicted felon.[1] On appeal, Trigger contends, among other things, that the trial court erred in refusing to strike five prospective jurors for cause, that the trial court erred in denying his *Batson* challenge, and that the trial court gave an improper sequential charge on malice murder, felony murder, and voluntary manslaughter. Finding these and other contentions to be without merit, we affirm.

1. On the night of April 3, 1996, Trigger and his girlfriend, Brenetta Mobley, had a fight during which Trigger hit her with his fists, knocked her to the floor, and stomped on her. In the early morning hours of April 4, James Ison, Mobley's friend, called the residence after learning of the earlier fight to see if she was alright. Mobley spoke to Ison on speaker phone and told Ison that everything was alright. Trigger told Ison that he and Mobley could solve their own problems, and Ison then asked Trigger if he had anything that he wanted to talk about with Ison. Trigger stated that he did and Ison said that he would come over. Ison arrived at Mobley's residence at 3:00 a.m., and at that time, several other people were at the residence, including Glenn Petty. Petty testified that he was playing cards with several people before Ison arrived, and that Trigger showed him a .357 Magnum that he had stuck in his belt. Petty and others testified that when Ison arrived, Ison and Trigger exchanged words and a physical struggle ensued, and that Trigger pulled a gun and shot Ison in the left leg. Ison then ran down the hall into Mobley's bedroom. Several witnesses testified that although they, as well as Ison, urged Trigger not to shoot Ison again, Trigger shot him again and hit him in the right thigh. Ison, who was bleeding heavily, jumped out of the bedroom window and ran off.

The medical examiner determined that Ison had been shot twice,

---

[1] The crimes occurred on April 3, 1996, and Trigger was indicted on August 30, 1996. On November 2, 1998, following a bifurcated trial, a jury first found Trigger not guilty of malice murder, guilty of felony murder, and guilty of aggravated assault, and then found him guilty of the possession of a firearm by a convicted felon. That same day, the trial court sentenced Trigger to life in prison for felony murder and to five consecutive years in prison for the possession offense. The aggravated assault offense merged into the felony murder offense as a matter of law. Trigger obtained new counsel for appeal. On November 10, 1998, Trigger filed a motion for new trial, and on February 28, 2000, and June 21, 2000, Trigger filed amended motions for new trial. The court reporter completed the certification of the trial transcript on December 3, 1998. On November 29, 2001, the trial court denied the motion for new trial, as amended. On December 26, 2001, Trigger filed a notice of appeal. The appeal was docketed in this Court on April 3, 2002, and was submitted for decision on briefs on May 27, 2002.

once in the left lower leg and once in the right thigh. The shot to the left leg was not life threatening, but the shot to the right leg hit a major artery, resulting in uncontrollable blood loss and death.

At trial, Trigger testified that he did not have a gun in his belt when Ison came in the house; that he was scared that Ison might have a weapon due to the way he was holding his right arm back and out of Trigger's sight; that he repeatedly asked Ison to leave the house, but that Ison refused; that during the struggle, he (Trigger) grabbed a gun that was on a shelf of a china cabinet; that Ison grabbed Trigger's hand, causing the gun to fire; that when he followed Ison to the bedroom, he thought Ison might have a weapon; and that he shot Ison again when he thought Ison was jumping off the bed toward him.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Trigger guilty of felony murder and the possession of a firearm by a convicted felon beyond a reasonable doubt.[2] Moreover, with regard to the possession offense, Trigger contends that the record shows that he entered a plea under the First Offender Act, and that he therefore was not barred from possessing a firearm. However, only a person who is discharged from probation as a first offender without a court adjudication of guilt is permitted to possess a firearm.[3] Here, the record shows that Trigger had not been discharged from probation as a first offender at the time of the assault on Ison, but instead had had his first offender probation revoked. Accordingly, Trigger's contention that he was not barred from possessing a firearm is without merit.

2. Trigger contends that the trial court erred in refusing to strike five prospective jurors for cause.

(a) We conclude that the trial court did not err in refusing to strike Mr. Myers for cause. First, although Myers expressed a belief in the credibility of police witnesses, he did not indicate that he "would automatically credit the officer's testimony regardless of other evidence presented at trial."[4] Moreover, Myers's answers to questions concerning whether he thought Trigger was guilty because he had been indicted do not demonstrate that Myers had a fixed opinion about Trigger's guilt or innocence.[5] Finally, Myers's prior experi-

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] OCGA § 16-11-131 (f).

[4] *Raulerson v. State*, 268 Ga. 623, 629-630 (4) (491 SE2d 791) (1997). Accord *McPherson v. State*, 274 Ga. 444, 448-449 (553 SE2d 569) (2001).

[5] See *Somchith v. State*, 272 Ga. 261, 262 (2) (527 SE2d 546) (2000) ("Before a juror is excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence.").

ence as a security officer in the military was not a ground to excuse him for cause.[6] For these reasons, we conclude that the trial court did not err in refusing to exclude Myers for cause.

(b) Having examined Trigger's contention that the trial court should have excused four other prospective jurors for cause, we conclude that they did not express such fixed opinions about Trigger's guilt that they could not decide the case based upon the law and the evidence.[7] Accordingly, the trial court did not abuse its discretion in refusing to strike the jurors for cause.

3. The State used five of its peremptory strikes against African-American prospective jurors, and at trial, Trigger contended that the State had exercised its strikes in a racially discriminatory manner, violating *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). On appeal, Trigger challenges only two of the State's strikes, and contends that the trial court erred in finding that the reasons for those strikes were racially neutral. We disagree.

Because "[t]he ultimate burden of persuasion regarding racial motivation of peremptory strikes rests with and never shifts from the opponent of the strike,"[8] the opponent of the strike has "the burden of proving that the State engaged in purposeful discrimination in the exercise of its peremptory strikes."[9] Moreover, a trial court's findings on a *Batson* motion "are entitled to great deference [and] will not be disturbed unless clearly erroneous."[10]

As for one of the prospective jurors in the present case, the prosecutor stated that she was struck because she was inattentive and uninterested in the process and appeared to be frustrated with the answers given by another prospective juror. As for the other prospective juror in question, the prosecutor stated that she was struck because she slept constantly during the voir dire process and because she had a son who had pending criminal charges against him. Because this Court has upheld trial courts' findings that inattentiveness during voir dire,[11] sleeping through voir dire,[12] and having a relative with a pending charge in a criminal case[13] are race-neutral reasons for striking jurors, and because we cannot conclude that the trial court's finding concerning discrimination was clearly erroneous in this case, we affirm the trial court's denial of Trigger's *Batson*

---

[6] *Glover v. State*, 274 Ga. 213, 215 (552 SE2d 804) (2001).

[7] *Somchith*, 272 Ga. at 262-263.

[8] *Williams v. State*, 271 Ga. 323, 324 (2) (519 SE2d 232) (1999), citing *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 1771, 131 LE2d 834) (1995).

[9] *Williams*, 271 Ga. at 324.

[10] Id. at 325.

[11] *Roundtree v. State*, 270 Ga. 504, 506-507 (5) (511 SE2d 190) (1999).

[12] *Foster v. State*, 272 Ga. 69, 71, n. 1 (525 SE2d 78) (2000).

[13] Id.

motion.[14]

4. When the trial court charged the jury on the possession of a firearm by a convicted felon, the trial court charged the jury that the offense of possession of cocaine with the intent to distribute, which was the prior felony on which the possession of a firearm charge was based, was a felony. Trigger contends that this instruction constituted an improper comment on the evidence in violation of OCGA § 17-8-57. We disagree, and hold that, under the circumstances of this case, simply stating the legal proposition that a certain crime is a felony did not constitute an improper comment on the evidence.[15]

5. In two enumerations of error, Trigger contends that the trial court violated the principles of *Edge v. State*[16] in charging the jury on voluntary manslaughter, felony murder, and aggravated assault. However, our review of the trial court's charge shows that it complied with *Edge*. Accordingly, we find no merit to these enumerations.

6. Trigger contends that his trial counsel was ineffective. We conclude, however, that Trigger is procedurally barred from asserting this issue on appeal. Trigger obtained new counsel for the motion for new trial, who raised the issue of ineffective assistance of trial counsel in a written amended motion for new trial. However, at the hearing on the motion for new trial, Trigger did not assert ineffective assistance of trial counsel as a claim, and no hearing was held on the issue. Trigger is thus procedurally barred from raising the issue on appeal.[17]

7. Trigger contends that in the portion of the bifurcated trial dealing with the possession offense, the trial court erred by failing to charge the jury that the State had the burden to disprove Trigger's defense of justification. However, contrary to Trigger's contention, the record shows that the trial court did charge the jury on the State's burden to disprove the defense of justification beyond a reasonable doubt.

*Judgment affirmed. All the Justices concur.*

---

[14] We similarly find no merit to Trigger's claim that the trial court's ruling on the prosecutor's strikes of the two prospective jurors in question denied Trigger his statutory right under OCGA § 15-12-165 to peremptory strikes to select his jury.

[15] In this regard, we note that when charging on felony murder, it is standard practice for trial courts to charge that the offense charged as the underlying felony is a felony. See Suggested Pattern Jury Instructions, Vol. II, Criminal Cases, 2nd ed., Part 4 (B) (1) (c), p. 69.

[16] 261 Ga. 865 (414 SE2d 463) (1992).

[17] See *Wright v. State*, 275 Ga. 427, 429 (569 SE2d 537) (2002); *Hufstetler v. State*, 274 Ga. 343, 345 (3) (553 SE2d 801) (2001); *Thompkins v. State*, 272 Ga. 835, 836 (2) (c) (536 SE2d 747) (2000).

DECIDED SEPTEMBER 30, 2002.

*Franklin & Hubbard, Curtis L. Hubbard, Jr.*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Elizabeth A. Baker, Alvera A. Wheeler, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General*, for appellee.